JONES, JUDGE:
By a written stipulation filed in this case, counsel for the claimant, Vogt-Ivers & Associates, and counsel for the respondent, State Tax Commissioner, have agreed that the parties entered into three separate written contracts of like import for the preparation of tax maps for Webster, Lewis and Upshur Counties upon terms substantially as hereinafter set forth.
The estimated compensation of $36,733.92 for the tax mapping of Webster County was arrived at by assigning $2,500.00 of that figure for aerial photography, with the remainder of the total estimated compensation being based on 8,432 entries on the land books at $4.06 per parcel, 7,882 of which entries were included on the completed tax maps, leaving 550 entries which were not included. The amount paid the claimant for the preparation of the Webster County maps was $34,500.92, made up of $2,500.00 for aerial photography and $4.06 per parcel for the 7,882 parcels or $32,000.92. It is agreed that if the respondent owes the claimant any additional sum of money under the Webster County contract the amount owing would be for the 550 parcels not included on the completed tax map at $4.06 per parcel or $2,200.33.
The estimated compensation of $68,779.00 for Lewis County was based on 12,620 entries on the land books at $5.45 each, 10,811 separate parcels of which were included on the completed tax maps of Lewis County and 1,809 entries not being included. The amount paid to the claimant for the preparation of the Lewis County maps was $5.45 per parcel for 10,811 parcels, a total payment of $58,919.95, and it is agreed that if *234 the respondent owes the claimant any additional compensation, it would be for the 1,809 land book entries which were not included on the final tax maps at $5.45 per item or $9,859.05.
The estimated compensation in the amount of $61,377.30 for Upshur County was based on the number of parcels of land listed on the land books of said County, being 12,146 entries at $5.05 each. 11,409 of the total entries were included on the completed tax maps and 737 such entries were not included. The amount paid to the claimant for the preparation of the Upshur County maps was at the rate of $5.05 per parcel for 11,409 parcels or $57,615.45, and it is agreed that if the respondent owes the claimant any additional compensation it would be for 737 parcels at $5.05 per parcel or $3,721.85.
It further has been stipulated that in the case of each County the number of entries appearing on the land books but which were not included in the completed tax maps is accounted for by the following: (a) double assessments on the same piece of property; (b) recorded deeds for portions of land which could not be located; (c) numerous deeded portions which ended up in rights of way for railroads, highways, etc.; and (d) divided interests in the same piece of property.
The total amount of this claim is $15,813.90 and, according to the stipulation, if the claimant is entitled to recover under its interpretation of the terms of the three contracts, that amount is admitted to be due and owing.
Pertinent sections of the contracts, which are identical except for the compensation to be paid, are the following:
“ARTICLE I
* * *
6. Definition of a Parcel
A. For the purposes of this agreement, a “parcel” shall mean any portion of land described by a deed recorded in the official records of the county wherein the land is situate. Provided, however, where the owner of any such parcel has subdivided his land into separate lots and recorded a map or plat of such subdivision, the Engineer shall treat each separate lot of such subdivision as a separate parcel. However, where an owner of land has consolidated his contiguous real estate holdings into *235 one entry upon the assessor’s land books, then such holdings shall be treated as one parcel in spite of the fact that ownership is evidenced by more than one deed.
B. Each parcel shall be numbered. Map parcel numbers shall be consecutive, beginning with number one on each map sheet. Parcel numbers shall begin in the upper left hand corner of map sheets and shall continue from left to right ending in the lower right hand corner of each sheet.”
“ARTICLE VI
The party of the first part will pay to the Engineer, in consideration of and as compensation for, the Engineer’s performance of its obligations under the terms of this agreement, the sum of ($4.06 for Webster County, $5.45 for Lewis County and $5.05 for Upshur County) for each separate parcel of land actually included in the completed tax maps to be provided for said (Webster, Lewis, Upshur) County under the terms of this agreement, the total estimated cost of which is ($36,733.92 for Webster County, $68,779.00 for Lewis County and $61,377.30 for Upshur County).” (Words and figures in parenthesis supplied from separate contracts.)
The claimant would have the decision in this case turn on the first sentence in Article I, Paragraph 6A, of each of the contracts, which reads: “For the purposes of this agreement, a ‘parcel’ shall mean any portion of land described by a deed recorded in the official records of the county wherein the land is situate.” Claimant contends that it was to be paid for every portion of land described by a deed in the County Clerk’s office whether such portion actually existed or not or was left off the final tax maps for one of the other reasons hereinabove set out. The claimant further says that there were as many or more tracts of land dealt with than were actually numbered and shown on the final maps, and that somehow each of these theoretical tracts or parcels, are “included” in the completed tax maps.
However, the consideration and compensation for the engineer’s services is specifically set out and described in Article VI as being a fixed sum for each separate parcel of land actually included in the completed tax maps to be provided for the respective County under the terms of the agreement. Each of these contracts calls for an estimated compensation based upon an estimated number of parcels to be paid for at a fixed rate *236 per parcel. It is obvious that neither party knew how many parcels would finally be shown on the tax maps but it was equally obvious to anyone having knowledge of our county land book records that many of the items listed on the land books and included in the estimates would prove to be nonexistent or for other reasons would not be includable upon the maps for the purposes outlined in the contracts. It is also obvious that the pieces of land shown on the land books but found not to be includable upon the maps should entail greater work and investigation than the land book entries which were easily identifiable, but that must have been taken into account by the claimant and may not alter the plain language of the contracts. It seems very likely that the claimant underestimated the additional trouble these items would cause when it submitted its bid.
We think it may be assumed that the items of property appearing upon the land books, upon which the estimated compensation was based, were not recorded without some reason, and in practically all cases there would be some description, no matter how erroneous, in a deed “recorded in the official records of the County wherein the land is situate.” One of the purposes of the mapping projects was to eliminate improper assessments and as accurately as possible to determine the number and descriptions of the taxable units of real estate in each of the counties. Under the contracts each separate parcel included in the completed maps was to be numbered, and upon consideration of the whole contract, it appears to the Court and the Court finds that the parties intended that the total of such numbered parcels should be paid for at the specified rate per parcel. The Court believes that the contracts are clear as to the amount of compensation to* be paid and it appears from the record in this case that the claimant has been paid in full.
Accordingly, the claim for an award in this case is disallowed.